UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GOUX ENTERPRISES, ET AL. | CIVIL ACTION |
| VERSUS | NO. 22-4330 |
| INDIAN HARBOR INSURANCE COMPANY, ET AL. | SECTION "R" (1) |

# ORDER AND REASONS

Before the Court is the motion to compel arbitration and stay litigation filed by defendants Indian Harbor Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, General Security Indemnity Company of Arizona, United Specialty Insurance Company, Lexington Insurance Company, Old Republic Union Insurance Company, GeoVera Specialty Insurance Company, and Transverse Specialty Insurance Company (collectively, the "domestic insurers").[1] Plaintiffs Goux Enterprises, Inc., Twin Oaks Nursing Home, Inc., Jesuit Bend Properties, LLC, and Riverbend Nursing and Rehabilitation Center, Inc. oppose the motion.[2]

---

[1] R. Doc. 7. Unless otherwise indicated, all cites to record documents refer to Case No. 22-4330.
[2] R. Doc. 41.

The Court also considers defendant Sedgwick Claims Management Services, Inc.'s ("Sedgwick") motion to dismiss.[3] Plaintiffs oppose Sedgwick's motion to dismiss.[4]

For the following reasons, the Court grants both motions.

I. **BACKGROUND**

This case is a consolidated action that arises out of damage plaintiffs allegedly sustained as a result of Hurricane Ida in August of 2021.[5] At the time of the hurricane, plaintiffs' properties were insured by the domestic insurers and two foreign insurers—HDI Global Specialty SE ("HDI") and Certain Underwriters at Lloyd's, London ("Lloyd's")—under a surplus lines commercial property insurance policy bearing Account No. 806270 (the "policy").[6] Sedgwick served as the third-party administrator and adjuster responsible for assessing the damage plaintiffs sustained.[7]

Plaintiffs filed a lawsuit against Sedgwick and the domestic insurers in the 40th Judicial District Court for the Parish of St. John the Baptist on

---

[3]    R. Doc. 22.
[4]    R. Doc. 26.
[5]    R. Doc. 1-1 ¶ 19.
[6]    Case No. 22-4355, R. Doc. 1 ¶ 1.  Each insurer issued a separate contract of insurance with the plaintiffs, which collectively constitute the policy. R. Doc. 1-1 ¶ 4.
[7]    R. Doc. 1-1 ¶

August 30, 2022.[8]  In their complaint, plaintiffs allege that after Hurricane Ida made landfall, they provided timely notice of their claim, which included, among other things, property damage, business income losses, business personal property, outdoor property, and evacuation coverage.[9]  They contend that the insurers improperly denied coverage under the policy.[10]  Plaintiffs brought claims against the insurers for breach of contract and breach of the duty of good faith and fair dealing[11] and sought a declaratory judgment that the insurers are subject to Louisiana's consumer protection laws and that the insurers failed to comply with the statutory deadlines set forth in La. Rev. Stat. §§ 22:1892 and 22:1973.[12]  Plaintiffs also brought claims for negligence and fraud against Sedgwick.[13]  In support of their claims against Sedgwick, plaintiffs contend that Sedgwick intentionally delayed its investigation and misrepresented facts regarding the state of the insured premises in order to "obtain an unjust advantage for" the domestic insurers and "to generate more business for Sedgwick."[14]

---

8   R. Doc. 1-1.
9   *Id.* ¶¶ 21-22.
10  *Id.* ¶¶ 38-41.
11  *Id.* ¶¶ 125-130.
12  *Id.* ¶¶ 116-124.
13  *Id.* ¶¶ 131-141.
14  *Id.* ¶ 139.

The domestic insurers removed plaintiffs' case to this Court.[15] Three days later, the domestic insurers and the foreign insurers together filed a separate action seeking to compel arbitration of plaintiffs' dispute regarding the insurance coverage. That action was consolidated with this case.[16] The domestic insurers then filed a motion to compel arbitration in this case on the grounds that the policy contains an arbitration clause that requires the parties to arbitrate "[a]ll matters in difference between" plaintiffs and the insurers.[17] Sedgwick thereafter filed its motion to dismiss for failure to state a claim.[18]

Plaintiffs oppose both motions.[19] The Court considers the parties' arguments below.

## II.  MOTION TO COMPEL ARBITRATION

### A.  Legal Standard

Federal courts apply a heavy presumption in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); 9 U.S.C. § 2. Doubts about the scope of arbitrability are construed in favor

---

[15]  R. Doc. 1.
[16]  R. Doc. 47.
[17]  R. Doc. 24.
[18]  R. Doc. 22.
[19]  R. Docs. 26 & 41.

of arbitration. *Hornbeck Offshore Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 755 (5th Cir. 1993) (citing *Mar-Len of La., Inc. v. Parsons-Gilbane*, 773 F.2d 633, 635 (5th Cir. 1985)).

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention") governs when a party seeks to compel arbitration outside the United States or otherwise attempts to enforce an arbitration agreement that "aris[es] out of a legal relationship . . . which is considered as commercial" and is not "entirely between citizens of the United States." 9 U.S.C. § 202; *see also Todd v. S.S. Mut. Underwriting Ass'n (Bermuda), Ltd.*, 601 F.3d 329, 332 (5th Cir. 2010). The U.S. Congress implemented the Convention through the Convention Act, Pub. L. 91-368, 84 Stat. 692 (1970). Under the Convention Act, courts may compel arbitration "in accordance with [an] agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206; see *Todd*, 601 F.3d at 332 n.4. The Convention Act incorporates the Federal Arbitration Act ("FAA") to the extent that the two do not conflict. 9 U.S.C. § 208; *Todd*, 601 F.3d at 332. The FAA authorizes a district court to enforce stays pending arbitration. 9 U.S.C. § 3.

**B. Discussion**

5

The policy at issue in this case includes an arbitration clause that submits "[a]ll matters in difference between the Insured and the Companies . . . in relation to this insurance, including its formation and validity . . . to an Arbitration Tribunal in the manner hereinafter set out."[20] The clause further provides that the arbitration "shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance."[21]

Louisiana law generally prohibits arbitration clauses in insurance contracts. *See* La. Rev. Stat. § 22:868 ("No insurance contract delivered or issued in this state and covering subjects located, resident, or to be performed in this state . . . shall contain any condition, stipulation, or agreement . . . [d]epriving the courts of this state of the jurisdiction or venue of action against the insurer"). Nevertheless, the Convention, as implemented by Congress in 9 U.S.C. §§ 201, *et seq.*, supersedes otherwise applicable state law. *See McDonnel Grp., LLC v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427, 431-32 (5th Cir. 2019). The purpose of the Convention is "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which

---

[20] R. Doc. 7-2 at 37.
[21] *Id.*

6

agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Sherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974).

The Convention requires courts to enforce arbitration clauses if four criteria are met: "(1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial relationship; and (4) a party to the agreement is not an American citizen." *Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 339 (5th Cir. 2004). Each of the four criteria is met in this case. First, the agreement is a written insurance contract containing an arbitration clause.[22] Second, the agreement provides that the arbitration must take place in the United States, a signatory to the Convention. *Id.*; *see also City of Kenner v. Certain Underwriters at Lloyd's London*, No. 22-2167, 2022 WL 16961130, at *2 (E.D. La. Nov. 16, 2022). Third, the agreement "arises out of a commercial relationship." *Feudensprung*, 379 F.3d at 339; *see also City of Kenner*, 2022 WL 16961130, at *2 (holding that a dispute over an insurance policy "arises out of a commercial relationship" for purposes of the Convention). Finally, the insurers contend, and plaintiffs do not dispute, that at Lloyd's and HDI are foreign citizens. *Id.* (finding that the

---

[22] R. Doc. 7-2 at 37.

7

fourth element is satisfied because "multiple underwriters at Lloyd's are citizens of the United Kingdom and HDI is a citizen of Germany").

Notably, not all of the insurers involved in this case are foreign. As this Court and others have recently observed, when a policy consists of multiple insurance contracts issued by multiple insurers, each insurance contract "that comprise[s] the account policy [is] its own contract." *Id.* The insurance contracts between plaintiffs and the domestic insurers thus do not meet the fourth requirement because there is no "party to the agreement [that] is not an American citizen." *Freudensprung*, 379 F.3d at 339. Nevertheless, courts have consistently held that that when an insured alleges that all insurers engaged in "interdependent and concerted misconduct" by "arbitrarily and capriciously" failing to make payments under a policy, the insured is equitably estopped from objecting to arbitration as to the domestic insurers. *City of Kenner*, 2022 WL 16961130, at *3; *see also Port Cargo Serv., LLC v. Certain Underwriters at Lloyd's London*, No. 18-6192, 2018 WL 4042874, at *6-8 (E.D. La. Aug. 24, 2018) (compelling arbitration as to both foreign and domestic insurers because plaintiffs alleged that the insurers "all breached the terms of the policy together through the shared adjustor," rather than alleging "that one specific insurer breached the terms of the policy"); *Glad Tidings Assembly of God Church of Lake Charles v. Indian*

8

*Harbor Ins. Co., et al.*, No. 21-1009, 2021 WL 2676963, at *2 n.3 (W.D. La. June 29, 2021) ("[T]he domestic insurers . . . are equally empowered to enforce the agreement as the foreign insurers.").

Plaintiffs' chief argument in opposition to the motion to compel arbitration is that the first requirement—a written agreement to arbitrate the matter—is not met because the arbitration clause in the policy was not signed by plaintiffs. They contend the arbitration clause is thus not enforceable under Article II of the Convention, which provides:

1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

2. The term 'agreement in writing' shall include an arbitral clause in a contract or an arbitration agreement, ***signed by the parties*** or contained in an exchange of letters or telegrams.

Convention, art. II(1)-(2) (emphasis added).

Plaintiffs' argument is foreclosed by binding Fifth Circuit precedent. In *Sphere Drake Ins. PLC v. Marine Towing, Inc.*, the Fifth Circuit interpreted Article II of the Convention to require either (1) an arbitral clause in a contract or (2) an arbitration agreement signed by the parties or contained in an exchange of letters or telegrams. 16 F.3d 666, 669 (5th Cir. 1994). The

court held that "[b]ecause what is at issue [was] an arbitral clause in a contract" rather than an arbitration agreement, the "qualifications applicable to arbitration agreements [did] not apply." *Id.* "A signature [was] therefore not required." *Id.* The Fifth Circuit recently reiterated that "Article II does not require a signature when the arbitration clause is part of a broader contract." *Neptune Shipmanagement Servs. PTE Ltd. v. Dahiya*, 15 F.4th 630, 638 (5th Cir. 2021) (citing *Sphere Drake*, 16 F.3d at 669).

Plaintiffs acknowledge the holding of *Sphere Drake*, but urge the Court to depart from this precedent in light of out-of-circuit cases that reach a different conclusion.[23] Plaintiffs also contend that subsequent Fifth Circuit decisions cast doubt on the continued vitality of *Sphere Drake*.[24] This argument must be rejected. The Fifth Circuit's "rule of orderliness" provides that not even a later panel of the Fifth Circuit, much less a district court, can overturn a previous panel's decision, unless the law has been changed by statutory amendment, the Supreme Court, or the Fifth Circuit *en banc*. *See Ashi Houma Hotels, LLC v. Indep. Specialty Ins. Co.*, No. 22-5289, 2023 WL 2263822, at *3 (E.D. La. Feb. 28, 2023) (citing *United States v. Simkanin*, 420 F.3d 397, 420 n.25 (5th Cir. 2005)) (granting insurers' motion to compel

---

[23] R. Doc. 41 at 11-13.
[24] *Id.* at 14-15.

10

over plaintiff's argument that the arbitration clause in the insurance policy was not signed by the parties). Plaintiffs have pointed to no intervening change in the law that would authorize this Court to fail to follow the Fifth Circuit's decision in *Sphere Drake*.

Plaintiffs also argue that if the Court compels arbitration, it should hold that Louisiana law applies to the dispute.[25] In particular, plaintiffs note that the policy provides that "the Arbitration Tribunal may not award exemplary, punitive, multiple, consequential, or other damages of a similar nature."[26] They thus ask the Court to find that the remedies set forth in La. Rev. Stat. §§ 22:1892 and 22:1973, which provide for bad faith penalties under certain circumstances, are available to plaintiffs. But the Court's "limited inquiry at this stage is confined to determining the applicability of the Convention to the arbitration clause at issue." *Ashi Houma Hotels, LLC*, 2023 WL 2263822, at *4 (internal quotation marks omitted). Plaintiffs provide no authority that would allow this Court to mandate the law to be applied in the future arbitration proceeding.

---

[25] *Id.* at 17.
[26] R. Doc. 7-2 at 37.

For all of the foregoing reasons, the Court hereby compels arbitration in accordance with the terms of the arbitration clause in the policy and stays this case pending resolution of the arbitration. 9 U.S.C. § 3.

## III. SEDGWICK'S MOTION TO DISMISS

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The Court may also consider documents attached to a motion to dismiss or an

opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id.* The district court 'may also consider matters of which [it] may take judicial notice.'" *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)).

## B. Discussion

Plaintiffs bring claims for negligence and fraud against Sedgwick for its alleged misconduct in its capacity as the third-party administrator of the policy.[27] In support of their claims, they allege, among other things, that Sedgwick delayed assigning an adjuster and investigating plaintiffs' losses, ignored and underpaid plaintiffs' requests for advance payments under the policy, and "grossly miscalculated" plaintiffs' losses.[28] They contend that Sedgwick's goal was to "save their clients money and increase their payment at the plaintiffs' expense."[29]

Under Louisiana law, "there is generally no cause of action against an insurance adjuster for processing and handling an insurance claim." *Bellina v. Liberty Mut. Ins. Co.*, No. 19-13711, 2020 WL 1689825, at *3 (E.D. La. Apr.

---

[27] R. Doc. 1-1 ¶ 48.
[28] *Id.* ¶¶ 69, 76-78, 94.
[29] *Id.* ¶ 109.

7, 2020). Even when an adjustor's investigation is substandard, the independent adjuster owes no duty "to an insured to conduct a proper investigation." *Id.* Although plaintiffs disagree with Sedgwick's determinations of plaintiffs' loss, such disagreements "cannot form the basis of a claim against [an adjuster] under Louisiana law." *Id.*

In their opposition to Sedgwick's motion to dismiss, plaintiffs rely on older cases from this district, which later decisions refused to follow. These cases hold instead that "the duties of insurers cannot be extended to insurance adjusters, and insurance adjusters are generally not liable in tort." *Delgado v. Ocean Harbor Cas. Ins. Co.*, No. 22-1987, 2022 WL 17092125, at *4 (E.D. La. Nov. 21, 2022) (collecting cases). Further, "Louisiana courts and federal courts applying Louisiana law have noted . . . that an insurance adjuster may be liable" to an insured only "in rare circumstances when the adjuster *assumes a duty* to the insured," including circumstances involving misrepresentation or fraud. *Id.*

Plaintiff brings claims for fraud, but courts have consistently held that an insurance adjuster does not "assume a duty" to the insured merely by misrepresenting the scope of the insured's damage. *Delgado*, 2022 WL 17092125, at *5; *see also Hadleigh-West v. Selective Ins. Co. of the Southeast*, 2022 WL 824423, at *3 (E.D. La. Mar. 18, 2022) (distinguishing

14

a claim that an insurance adjuster misrepresented the extent of plaintiff's compensable losses, which does not give rise to liability in tort, from a claim that an insured relied to their detriment on an insurance adjuster's advice regarding when to file a claim, resulting in the insured filing an untimely claim). But even if Sedgwick could assume a tort duty by fraudulently misrepresenting the extent of plaintiffs' damages, plaintiffs' allegations fail to state a claim for fraud.

Under Louisiana law, "delictual fraud and intentional misrepresentation" requires "(1) a misrepresentation of material fact, (2) made with the intent to deceive, and (3) causing justifiable reliance with resultant injury." *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 626-27 (5th Cir. 1999). Further, Rule 9 of the Federal Rules of Civil procedure requires that when "alleging fraud . . ., a party must state with particularity the circumstances constituting fraud." The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff [who alleges] fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008). Plaintiffs generally allege that Sedgwick committed fraud by withholding information "to deny coverage, save their clients money, and increase their

15

payment at the plaintiffs' expense," and by affirmatively misrepresenting the extent of plaintiffs' damage. Both of these theories are deficient.

As to plaintiffs' fraudulent omission theory, "a plaintiff alleging fraud by silence should be able to allege the following with reasonable particularity: (1) the information that was withheld, the general time period during which the fraudulent conduct occurred, (3) the relationship giving rise to the duty to speak, and (4) what the person or entity engaged in the fraudulent conduct gained by withholding the information." *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F. Supp. 587, 598 (E.D. La. 1993). But "[i]t is well-settled in Louisiana . . . that there is no fraud by silence unless there is a duty to speak," and "no case impos[es] a duty on an independent insurance adjuster to an insured to conduct a proper investigation or to advise an insured of coverage issues." *Bellina*, 2020 WL 1689825, at *4. Plaintiffs' fraud-by-omission theory is thus legally deficient.

Plaintiffs' allegations that Sedgwick affirmatively misrepresented the extent of their damages fare no better. Even if plaintiffs' allegations that Sedgwick misrepresented the extent of plaintiffs' damages were sufficiently detailed to meet the heightened pleading requirements of Rule 9, plaintiffs have not plausibly alleged the other elements of a fraud claim. As to Sedgwick's intent to deceive, plaintiffs allege that Sedgwick misrepresented

16

the amount of plaintiffs' losses "to obtain an unjust advantage for the [insurers]," which, in turn, could "generate more business for Sedgwick."[30] But generalized financial motives are insufficient to support an inference of scienter. *See Flaherty & Crumrine Preferred Income Fund., Inc. v. TXU Corp.*, 565 F.3d 200, 213 (5th Cir. 2009) ("[T]his court has held that certain motives alleged, especially those universal to corporations and their officers, do not suffice to establish an inference of fraud under Rule 9(b)." (collecting cases)); *see also Operaciones Tecnicas Marinas S.A.S. v. Diversified Marine Servs., LLC*, 913 F. Supp. 2d 254, 259 (E.D. La. 2012) ("[P]laintiffs do not sufficiently allege motive by making generic allegations that the defendant had a financial interest in carrying out the alleged fraud." (internal quotation marks omitted)). Nor do plaintiffs allege the ways in which they relied to their detriment on Sedgwick's misrepresentations regarding the extent of the damage they sustained. In their opposition brief, plaintiffs generally contend that they relied on Sedgwick's representation that it had the authority to manage and make decisions on the claim, and that plaintiffs were unable to fund the timely reconstruction and opening of their property and business as a result.[31] But plaintiffs do not contend that Sedgwick's representation that

---

[30] *Id.* ¶ 139.
[31] R. Doc. 26 at 10.

17

it had authority to manage and make decisions on the claim was a misrepresentation. Rather, they contend that Sedgwick misrepresented the extent of plaintiffs' damage. There are no allegations that plaintiffs relied on these representations.

Plaintiffs seek leave to amend in the event the Court grants Sedgwick's motion. The Court should "freely give" leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Leal v. McHugh*, 731 F.3d 405, 417 (5th Cir. 2013). "Among the permissible bases for denial of a motion to amend are . . . repeated failure to cure deficiencies by amendments previously allowed, . . . [and] futility of amendment." *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 391 (5th Cir. 2005). The Court finds that, in light of the deficiencies in plaintiffs' legal theories against Sedgwick, leave to amend would be futile.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to compel arbitration. The Court further stays and administratively closes this case pending arbitration. The Court also GRANTS Sedgwick's motion to dismiss. Plaintiffs' claims against Sedgwick are hereby DISMISSED WITH PREJUDICE. Sedgwick also moved for leave to join the insurers' motion to

compel arbitration. Because the Court dismisses with prejudice plaintiffs' claims against Sedgwick, Sedgwick's motion for leave[32] is hereby DISMISSED as moot.

New Orleans, Louisiana, this __14th__ day of April, 2023.

                                           _Sarah Vance_____
                                             SARAH S. VANCE
                                UNITED STATES DISTRICT JUDGE

---

[32] R. Doc. 38.